IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| IVA J. KING, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05-856-PK |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ALAN STUART GRAF
1020 SW. Taylor Street, Suite 230
Portland, OR 97205

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 SW. Third Avenue, Suite 600
Portland, OR 97204-2904

DAVID M. BLUME
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

PAPAK, Magistrate Judge:

Plaintiff Iva Jean King seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). I recommend the Commissioner's decision be affirmed and the case dismissed.

## BACKGROUND

Born in 1952, King completed high school and in 1992 completed training as a Certified Nurses Aid. Tr. 80.[1] She subsequently worked as a telemarketer, office clerk, nursery worker, waitress, certified nurse's aid, foster home owner and manager, nursing home caregiver, cashier and stock clerk. Tr. 119, 596-7.

King states that she was first bothered by her fatigue, diabetes and post-traumatic stress disorder (PTSD) in 1985. Tr. 73. King also alleges disability due to incontinence. Tr. 73, 577-8. King contends she has been disabled and unable to work because of these impairments since February 1, 2003. Tr. 18.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520(a); 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). King challenges the ALJ's evaluation

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on July 21, 2005 (Docket #8).

of the evidence in establishing her impairments at step three and his conclusions at steps four and five.

In step one, the claimant is not disabled if the Commissioner determines the claimant has engaged in substantial gainful activity. *Id.*; 20 C.F.R. § 404.1520(a)(4)(I); 416.920(a)(4)(I). In step two, the claimant is not disabled if the Commissioner determines the claimant does not have a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.15209(a)(4)(ii); 416.920(a)(4)(ii). In step three, there is a conclusive presumption of disability if the Commissioner determines the claimant's impairments meet a listed impairment, which the Commissioner acknowledges as severe enough to preclude substantial gainful activity. *Yuckert*, 482 U.S. at 140-1; 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. §§ 404.1520(a)(4)(iv); 416.920(f). If the claimant can perform past relevant work, she is not disabled. If claimant cannot perform that work, the matter proceeds to step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). The initial burden of establishing functional limitations rests upon the

3 - FINDINGS AND RECOMMENDATION

claimant. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Yuckert*, 482 U.S. at 141-2; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566; 416.966.

## THE ALJ'S FINDINGS

The ALJ found King "generally not credible" and "not totally credible." Tr. 17, 20. He found her ability to work limited by her PTSD, depression, diabetes, mild spinal degenerative changes and obesity. Tr. 20. The ALJ assessed King's RFC:

> The claimant has the following residual functional capacity to perform sedentary exertion work activity. She is limited to a low stress work environment with minimal interaction with others. She is also limited to jobs that involve only simple instructions. She is restricted to work that does not involve work with hazardous activities, which includes machinery and heights.

Tr. 20.

At step four, the ALJ found that King's RFC did not preclude her past relevant work as a "telephone saleserson/surveyor." Tr. 20. The ALJ's evaluation, drawing upon the vocational expert's testimony, also identified two examples of alternative work King could perform: small products assembler or cleaner/polisher. Tr. 19. Accordingly, the ALJ determined that King was not disabled under the Act at any time through the date of his decision. Tr. 20-1.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and

detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) *citing Martinz v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

King contends that the ALJ failed to reach an accurate RFC assessment because he improperly assessed her credibility, improperly rejected her testimony, improperly addressed psychological and medical evidence, and improperly discredited testimony of a lay witnesses. She also claims the ALJ relied on inadequate vocational testimony because it was based upon the disputed RFC assessment.

**1. King's Credibility**

The ALJ found King "generally not credible," and "not totally credible." Tr. 17, 20. The ALJ based his credibility finding primarily upon King's medical treatment record. Tr. 20. He also noted conflicting statements by King and testimony submitted by King's friend noting that King sometimes makes false claims about her health. Tr. 18. King's credibility in turn influences interpretation of her medical record and statements given by other witnesses, discussed below.

**a.    Credibility Analysis**

In determining credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and

5 - FINDINGS AND RECOMMENDATION

observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*. If the claimant presents pain testimony and produces evidence of a medical impairment responsible for that pain, the ALJ must consider that testimony and produce specific reasons for disbelieving such testimony. *Cotton v. Bowen*, 799 F.2d, 1403, 1407-8 (9th Cir. 1986). The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

### b.     Medical Evidence Supporting the ALJ's Credibility Determination

The objective medical evidence does not support the degree of impairment King alleges. Medical sources repeatedly transcribed her symptomatic reports, and on at least two substantive occasions could not produce clinical findings consistent with those reports. Tr. 293, 348-50.

King has documented insulin-dependent (Type I) diabetes with diabetic complications, including mild diabetic peripheral neuritis in hands and feet, fatty infiltration of the liver, fatigue, and urinary dysfunction. Tr. 162, 164, 170, 179, 183, 187, 549, 556-7. She also has an established clinical history of asthma, obesity and pancreatitis. Tr. 556-7.

King twice sought prolonged medical care for unsubstantiated complaints. During hospitalization for presumed pancreatitis, hospital staff noted that King's reports of pain were inconsistent. King irregularly requested pain relief, and responded to medication in a manner inconsistent with established pain protocol. Tr. 294. King subsequently told staff that she did

not feel anyone "believed" her reports of pain. Tr. 294. Her treating physician, Dr. Vance, noted that her pain complaints were disproportionate to her symptoms, and that, "interestingly," her pain vanished upon reassurance. Tr. 294. Vance concluded that treating King would be "an extreme challenge" because of her inconsistent and unreliable reporting. Tr. 294.

In June 2004 King visited an emergency room, reporting shoulder, chest and neck pain. Tr. 348. Initial examination did not reveal a cardiac explanation for her pain, but she was admitted to a nursing home for extensive diagnostic testing. Tr. 438-40. Testing yielded negative results. Tr. 348-9, 385. King apparently attempted prolonging her hospital stay, stating, "I don't think I'm ready to leave yet." Tr. 492. During this time, staff observed that King's reports of pain were inconsistent. Tr.483-4. King additionally refused prescribed treatment because of alleged pain. Tr. 486. The record indicates that she was admitted for twelve days; at her hearing King reported she stayed three weeks. Tr. 349, 582.

The ALJ may consider the claimant's alleged impairments in light of objective medical evidence. *Smolen*, 80 F.3d at 1284. The episodes described above do not corroborate the severe symptoms King reports. The ALJ appropriately stated specific reasons for questioning King's excessive symptom testimony. *See Cotton*, 799 F2.d at 1408-9. Because King's complaints are both inconsistent and unverified by objective medical evidence, the ALJ rationally found her lacking in credibility.

**c.   Other Credibility Considerations**

The ALJ may consider inconsistent statements by the claimant. King repeatedly made inconsistent statements to her doctors regarding her personal relationships. Tr. 461, 464, 474. She also presented inconsistent reasons for leaving her Wal-Mart job. Her initial application

7 - FINDINGS AND RECOMMENDATION

reported that she left due to medical disability. Tr. 73, 113. She told disability determination services (DDS) this as well. Tr. 140. However, she told her therapist that she was laid off for economic reasons. Tr. 314. Both reasons may plausibly apply, but the ALJ was rational and justified in noting this inconsistency. *Magallenes*, 881 F.3d at 750.

King's friend, former employer, and landlord, Brenda McAdams, submitted written statements to the record. Tr. 100-112. McAdams explicitly noted King's tendency to exaggerate medical claims, writing: "sometimes she tells people things about her health that aren't true." Tr. 101. McAdams also noted that King may have problems relating to doctors and nurses, saying, "she doesn't understand if they say she has a cyst, she tells everyone [she has] cancer and is dying." Tr. 103.

King's initial treating physician, Dr. Kagar, corroborated McAdams' observation that King exaggerates medical findings. Between 2002 and 2004, King routinely visited emergency rooms for non-emergency complaints, including back pain, arm pain, shoulder pain, stomach pain, coughing, "shakiness" and bruising. Tr. 162, 166, 238-42, 254-7, 260-2, 264-7, 274-7, 279-85. During this period Kagar repeatedly explained to King the medicaid guidelines for seeking and receiving emergency care. Tr. 236. In February 2005, King effectively "fired" Kagar as her treating physician apparently because of Kagar's restrictions on emergency room visits. Tr. 236.

King also told her therapist that her doctor restricted her from working in March 2003. Tr. 314. DDS correctly noted this alleged restriction is not supported by the medical record. Tr. 331.

In light of these discrepancies and third party statements, the ALJ's findings regarding

8 - FINDINGS AND RECOMMENDATION

King's credibility are sufficiently specific to permit and require this court to conclude they are not arbitrary. *See Batson*, 359 F.3d at 1193. If the ALJ determines that the claimant is not credible, he may reject her pain testimony. *Magallanes*, 881 F.2d at 755.

**2. Medical Source Statements**

King's medical record begins in 1999 and continues through November 2004. Her claim concerns the period between February 1, 2003 and the date of her hearing.

**a.     Physical Impairments**

King's record conclusively indicates insulin-dependent diabetes and related complications noted above. In April 2003, King's treating physician, Dr. Vance, explicitly stated that King's conditions do not prevent her from working. Tr. 332. In a letter addressed to DDS, Vance wrote:

> In my opinion, the patient can sit up to eight hours, stand up to eight hours, walk normally, hear normally, speak normally, travel as required and perform mental activities included in usual work including sustained concentration, persisting, interacting socially and adaptively to a near normal level.

Tr. 332. This statement does not suggest significant work restriction.

Generally, a treating physician's opinion is given controlling or substantive weight. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Additionally, Vance's opinion is not contradicted by any other acceptable medical source. The ALJ appropriately accorded significant weight to Vance's opinion regarding King's ability to work. *Id.*, Tr. 18.

King also submits she is hindered by incontinence. Tr. 577. The medical record contains one reference to this allegation. The ALJ consequently erred in stating the medical record did not mention this impairment. Tr. 17, 550, 556. King reported she experienced incontinence

beginning in 1985; notably she did not seek treatment or report this condition to any of her medical providers throughout the record. Tr. 75. Inadequately explained failure to seek treatment is a relevant factor in assessing an impairment. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc). No medical opinion suggests King is limited or impaired due to reported incontinence. Contrary to King's submission, the medical expert did not endorse King's incontinence at King's hearing. Tr. 591-2. Testimony alone never establishes disability. 20 C.F.R. §§ 404.1508; 416.908; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ may appropriately disregard claims unsubstantiated by the medical record. *See Thomas*, 278 F.3d at 957.

**b.   Mental Impairments**

King alleges PTSD stemming from childhood neglect and sexual abuse and sexual abuse in the course of military service. Tr. 460. An evaluative psychological exam conducted in December 2003 did not confirm a PTSD diagnosis, but found King has a depressive disorder in remission and a dependent personality disorder. Tr. 562.

King submits that due to her PTSD she will be unable to work before completing three years of psychotherapy. This submission was suggested by King's counselor, Judy Talley, a counseling and therapy intern holding an M.A. in psychology. Tr. 312, 316. Talley is not an acceptable medical source. 20 C.F.R. §§ 404.1513(a); 416.913(a). Talley is an "other,"or lay testimony, source. 20 C.F.R. §§ 404.1513(d); 416.913(d). The ALJ should have considered Talley's opinion, but Talley is not competent to make a medical diagnosis or dictate treatment. *See Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

DDS reviewing sources suggested King could perform simple three-step work, with

attention to simple tasks, no public contact and a routine work setting. Tr. 323. The ALJ presently accounted for these factors in King's RFC assessment. Tr. 18, 20. Additional psychiatric limitations are unsupported by acceptable medical evidence. The ALJ did not err in excluding these alleged limitations from King's RFC. 20 C.F.R. §§ 404.1513(6)(c); 416.913(6)(c).

### 3. Lay Witness Testimony

King finally contends that the ALJ improperly rejected the written statements of a lay witnesses in formulating her RFC. The ALJ has a duty to consider testimony of lay witnesses. *Lewis*, 236 F.3d at 511. Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Dodrill*, 12 F.3d at 918. The ALJ may not reject such testimony without comment, but he may reject lay testimony that is inconsistent with medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If he rejects lay witness testimony entirely he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467.

As noted above, Brenda McAdams submitted a written statement regarding King's restricted daily activities. Tr. 100-111. McAdams noted that King has a tendency to exaggerate healthcare complaints, and "sometimes says things about her health that are untrue." Tr. 101. In noting this observation, the ALJ did not entirely reject McAdam's testimony, and so is not required to give germane reasons for rejecting portions of McAdam's testimony. *Nguyen*, 100 F.3d at 1467.

The ALJ must consider lay testimony in evaluating symptoms, but lay testimony alone cannot establish a medical diagnosis. *Lewis*, 236 F.3d at 511-12. The ALJ may reject lay testimony inconsistent the medical record. *Id.* McAdam's observations that King could not work due to her diabetes and bone spurs on her feet are inconsistent with the medical record. Tr. 110. The ALJ correctly rejected lay testimony inconsistent with the medical evidence. *Nguyen*, 100F.3d at 1467. McAdams' observations do not show that King's behavior is medically necessary rather than self-limiting.

### 4.  Vocational Evidence

King submits that the ALJ incorrectly found that she could perform past relevant work as a telephone solicitor at step four. The Commissioner concedes error on this issue because telephone sales involves public contact, contrary to King's RFC.

However, the ALJ solicited vocational testimony regarding other jobs King could perform in the national economy, and included these findings in his decision summary and in his discussion.[2] Tr. 19, 595-601. In his "decision summary" the ALJ stated:

> I conclude Ms. King is not disabled within the meaning of the Social Security Act because there are significant numbers of jobs in the national economy, including her past relevant work, she can still perform despite work-related limitations resulting from "severe" medical impairments.

Tr. 14.

The ALJ explicitly concluded King was not disabled because she could perform past relevant work, but his opinion shows that he evaluated King at step five in the disability analysis process, and concluded that King could perform other work in the national economy. Tr. 19. The ALJ

---

[2]Normally included at step five of the disability analysis described above.

12 - FINDINGS AND RECOMMENDATION

erred in omitting his step five conclusion from his findings section, but this error is harmless.

### 5.  Application of Medical-Vocational Guidelines

King's final submission is that she should be found disabled consistent with the Social Security Administration's medical-vocational guidelines, or "grids." King submits she is disabled under 20 C.F.R. § 404 Subpt. P, App. 2, Rule 201.10.  This is erroneous:  Rule 210.10 applies only to claimants with "limited" education.  A  "limited" education is completion of the seventh through eleventh grades only.  20 C.F.R. §§ 404.l1564(b)(3); 416.964(b)(3).  King completed both high school and additional training as a certified nurses aid.  Tr. 80.

Furthermore, the ALJ may refer to the grids only when a claimant suffers from exertional impairments.  *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).  Nonexertional impairments, such as King's need for a low stress work environment with minimal interpersonal intereaction, are not assessed under the grids.  *Id.*  In such cases, the ALJ must call a medical expert to establish the effects of the claimant's impairments in a work environment.  *Id.*  The ALJ solicited and considered relevant vocational testimony. Tr. 14, 19, 45, 595-601.  King's submission that she is disabled under the grids fails.

Read as a whole, the medical record affirms the ALJ's finding that King is not entirely credible, that her symptomatic reports are exaggerated, and that her symptoms are frequently unsubstantiated without dispositive effect on her ability to work.

The forgoing discussion shows that King has failed to show any error in the RFC assessment.  The ALJ appropriately included all limitations identified in King's RFC assessment and in his hypothetical questions to the vocational expert.

///

///

## CONCLUSION

The Commissioner's decision that King did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. I recommend the Commissioner's decision be affirmed and the case dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due May 24, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections ten days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 8th day of May, 2006.

                                                                  __/s/ Paul Papak_____
                                                                    Honorable Paul Papak
                                                                    United States Magistrate Judge